FILED - USDC -NH
2026 APR 27 PM 1:27

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

**RANDALL COLLIER,**

Sui Juris, Pro Se, All Rights Reserved

Plaintiff,

v.

**Case No. 1:26-cv-00226-SM-TSM**

**STATE OF NEW HAMPSHIRE;**
**NH CIRCUIT COURT, 4TH CIRCUIT, FAMILY DIVISION-LACONIA;**
**NH CIRCUIT COURT, 8TH CIRCUIT, FAMILY DIVISION-KEENE**
**AND DISTRICT DIVISION-KEENE;**
**NH SUPERIOR COURT, CHESHIRE COUNTY;**
**REFEREES GARNER, CARROLL, GORDON, LOMBARDI,**
**TESSIER, RYAN, JOHNSON, AND FORREST,**
in their individual and official capacities;
**HILLARY MAY;**
**BELKNAP COUNTY COMMISSIONERS**
**PRISCILLA DUDEK AND MARK LABELLE;**
**BUREAU OF CHILD SUPPORT SERVICES (BCSS);**
**NH DEPARTMENT OF HEALTH AND HUMAN SERVICES;**
**AND JOHN/JANE DOES 1-20,**

Defendants.

---

# AMENDED COMPLAINT

---

## PROBABLE CAUSE BRIEF UNDER
## ASHCROFT v. IQBAL / BELL ATLANTIC v. TWOMBLY

**42 U.S.C. §§ 1983, 1985, 1986 | 18 U.S.C. §§ 1951, 1962 | 28 U.S.C. § 1343**

# STRUCTURAL CONSTITUTIONAL CHALLENGE
# TO NEW HAMPSHIRE TITLE IV-D
# ADMINISTRATIVE ADJUDICATION SCHEME

Filed by:

**Randall Collier**

Sui Juris, Pro Se, All Rights Reserved

26 Joslin Rd

Surry, New Hampshire 03431

603 803 3648

042611t@gmail.com

April 27th, 2026

## I. PRELIMINARY STATEMENT

**1.** This is a structural constitutional challenge to the New Hampshire Title IV-D administrative adjudication scheme, brought pursuant to 42 U.S.C. §§ 1983, 1985, and 1986; 18 U.S.C. §§ 1951 and 1962 (RICO); 28 U.S.C. § 1343; the First, Fifth, Seventh, and Fourteenth Amendments to the United States Constitution; and Axon Enterprise, Inc. v. FTC, 598 U.S. 175 (2023), which holds that structural constitutional challenges to administrative adjudication schemes may be raised directly in federal court without exhaustion of administrative remedies.

**2.** This is NOT an appeal of any state court order. Plaintiff does not ask this Court to review or reverse any state court judgment. This is an independent federal civil rights action challenging the *structure* of the Title IV-D administrative apparatus through which the State of New Hampshire adjudicates private parental rights, property rights, and liberty interests without Article III protections, without trial by jury, without rules of evidence, and through a tribunal that is financially incentivized by federal performance payments to maximize support collections and protective order enforcement.

**3.** The distinction is dispositive. Rooker-Feldman bars federal district court review of state court *judgments*. It does not bar independent claims that the *structure* producing those judgments is itself unconstitutional. *Skinner v. Switzer*, 562 U.S. 521, 532 (2011) (Rooker-Feldman does not preclude parties from asserting independent federal claims, including challenges to the constitutionality of the state law that provides the rule of decision). *Miroth v. County of Trinity*, 136 F.4th 1141 (9th Cir. 2025) (fraud claims against adverse parties are independent claims not barred by Rooker-Feldman). *Sternberg v. Warneck*, Case No. 2:23-cv-01466-APG-EJY (D. Nev. Apr. 20, 2026) (granting reconsideration on Rooker-Feldman grounds where fraud-based claims constitute independent federal claims).

**4.** Younger abstention does not apply to structural constitutional challenges. *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), held that when a plaintiff challenges the constitutionality of an administrative adjudication *scheme itself*, rather than seeking review of a particular adjudication, the challenge may proceed directly in Article III court. Plaintiff's challenge is to the Title IV-D apparatus—not to any individual custody order, support order, or protective order.

## II. JURISDICTION AND VENUE

**5.** This Court has jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343(a)(3) and (4) (civil rights), and 28 U.S.C. § 1332 (diversity). Plaintiff asserts claims under 42 U.S.C. §§ 1983, 1985, and 1986 for deprivation of rights under color of state law, and under 18 U.S.C. §§ 1962 and 1964 (RICO civil remedies).

**6.** Venue is proper under 28 U.S.C. § 1391(b) as the events giving rise to this action occurred within this District.

**7.** This Court has authority under *Axon Enterprise* to hear structural constitutional challenges to administrative adjudication schemes without requiring exhaustion. Plaintiff need not exhaust state remedies because the state remedies are the constitutional violation.

## III. PARTIES

### A. Plaintiff

**8.** Plaintiff Randall Collier is a natural person, citizen of the United States, and resident of New Hampshire. Plaintiff is the biological father of T.C. (minor child), and has been subjected to the New Hampshire Title IV-D administrative adjudication scheme since 2012.

### B. Defendants

**9.** The following Defendants are named in their individual and official capacities for actions taken under color of state law while operating within the Title IV-D administrative scheme:

**NH 4th Circuit Referees:** Michael Garner, James Carroll, Gordon, and Laura Lombardi—who presided over Plaintiff's family court proceedings in the Laconia Family Division, an administrative tribunal operating under the New Hampshire Title IV-D State Plan cooperative agreement with the federal Department of Health and Human Services, Office of Child Support Enforcement (HHS/OCSE).

**NH 8th Circuit Referees:** Tessier, Ryan, Johnson, and Forrest—who presided over Plaintiff's proceedings in the Keene Family and District Divisions under the same Title IV-D administrative scheme.

**NH District Court Judges:** McCafferty, Laplante, and Johnstone—who dismissed Plaintiff's prior federal constitutional challenges on jurisdictional doctrines while the structural Title IV-D challenge remained unaddressed.

**Belknap County Commissioners:** Priscilla Dudek and Mark Labelle—who signed or renewed the Title IV-D cooperative agreement binding the county judiciary to a federal revenue-extraction scheme.

**Bureau of Child Support Services (BCSS) and NH DHHS:** The state agencies operating as Title IV-D contractors under the federal cooperative agreement, receiving federal reimbursement and performance incentive payments under 42 U.S.C. § 658a.

**Hillary May:** The private party whose Domestic Violence Petition, filed without probable cause and without criminal prosecution, activated the Title IV-D administrative apparatus and served as the jurisdictional trigger for the administrative scheme's application to Plaintiff's parental rights.

## IV. THE DOCTRINE OF TWO CONTRACTS — APPLIED TO NEW HAMPSHIRE

*"That which is not supreme must yield to that which is supreme."*
— *Chief Justice Marshall*

**10.** Every referee, judge, and administrative officer in the New Hampshire Family Division who adjudicates cases involving child support, custody, or domestic violence within the Title IV-D framework simultaneously holds two irreconcilable contracts:

**Contract One: The Constitutional Oath.** Part II, Article 84 of the New Hampshire Constitution requires: "All officers of the state are to be sworn to support the Constitution." N.H. Const. Pt. II, Art. 84. This oath creates a contract between the judicial officer and the People of New Hampshire, requiring fidelity to constitutional protections including due process, trial by jury, and rules of evidence.

**Contract Two: The Title IV-D State Plan (Cooperative Agreement).** The New Hampshire Bureau of Child Support Services (BCSS) operates under the Title IV-D State Plan, last updated March 15, 2023. This State Plan IS the cooperative agreement with the federal government, binding New Hampshire's family court apparatus to federal mandates, federal performance metrics, and federal revenue incentives under 42 U.S.C. § 658a. The State Plan affirms compliance with Title IV-D of the Social Security Act, implementing federal regulations, and all applicable federal laws—establishing **federal supremacy** over the state adjudicatory apparatus.

**11.** These contracts cannot coexist. A judiciary bound to federal revenue performance metrics is NOT independent. A tribunal that receives federal incentive payments based on support collection volumes cannot simultaneously serve as a neutral arbiter of parental rights. The contract itself reveals the structural fraud.

**12.** This identical doctrine has been applied in the Middle District of Pennsylvania, where the Title IV-D cooperative agreements in Franklin County were found to contain the same internal contradiction: Section 2 claiming "Independence of the Judiciary" while Section 9 mandating "Federal Supremacy." See pending federal civil rights actions in the 39th Judicial District, Franklin County, PA, documenting the same structural constitutional defect across Pennsylvania's Title IV-D scheme.

## V. THE SUPREME COURT HAS SPOKEN — THE BEHEMOTH IS DEAD

*"We don't usually say the government can avoid a constitutional mandate merely by relabeling or moving things around."*
— *Justice Gorsuch, Oral Argument, SEC v. Jarkesy, No. 22-859 (Nov. 29, 2023)*

**13.** In 2023 and 2024, the Supreme Court of the United States delivered three decisions that destroyed the legal foundation under every Title IV-D administrative adjudication program in the country. These holdings apply with full force to New Hampshire's family court scheme:

### A. SEC v. Jarkesy, 603 U.S. 109 (2024)

**14.** Private rights cannot be adjudicated without Article III protections. The Seventh Amendment right to a jury attaches when the government seeks civil penalties for conduct traditionally adjudicated at common law. Child support obligations are private property rights rooted in common law. Custody determinations are private parental rights protected by the Due

Process Clause. *Troxel v. Granville*, 530 U.S. 57 (2000). Title IV-D administrative adjudication of those rights without jury trial protections is unconstitutional under Jarkesy.

**15.** Applied to New Hampshire: The Family Division Circuit Court adjudicates custody, support, and protective orders—all involving private property and liberty rights—without jury trial. Judge Garner himself acknowledged on the record: "Rules of Evidence do not apply." (April 16, 2024 Order on Pending Motions, p. 6). This is precisely the administrative tribunal Jarkesy condemns.

### B. Loper Bright Enterprises v. Raimondo, 144 S. Ct. 2244 (2024)

**16.** Courts must exercise independent judgment on questions of law. Chevron deference is dead. No deference to agency interpretations. State courts rubber-stamping Title IV-D administrative determinations without independent review violate Loper Bright. The Family Division's deference to BCSS findings, support calculations, and enforcement recommendations is constitutionally impermissible.

### C. Axon Enterprise, Inc. v. FTC, 598 U.S. 175 (2023)

**17.** Structural constitutional challenges to administrative adjudication schemes go directly to federal court. Plaintiffs need not exhaust administrative remedies before challenging the constitutionality of the system itself. Plaintiff's challenge to the Title IV-D scheme proceeds directly in this Court. No state exhaustion is required because the state system IS the constitutional violation.

## VI. THE NEW HAMPSHIRE STATE PLAN — THE CONTRACT THAT BINDS THE TRIBUNAL

**18.** The New Hampshire Title IV-D State Plan, dated March 15, 2023, on file with the federal Office of Child Support Enforcement (OCSE), is the cooperative agreement by which New Hampshire binds its family court apparatus to the federal Title IV-D revenue scheme. Key provisions include:

**(a) Federal Supremacy:** The State Plan affirms New Hampshire's compliance with Title IV-D of the Social Security Act, implementing federal regulations, and all applicable federal laws. 42 U.S.C. §§ 651-669b.

**(b) Federal Reimbursement:** New Hampshire receives 66% federal reimbursement on administrative costs for Title IV-D operations, plus performance incentive payments under 42 U.S.C. § 658a tied to collection volumes and enforcement rates.

**(c) Cooperation Requirements:** The BCSS State Plan (CSM Item 625, dated 12/20, PR 20-18) mandates cooperation with BCSS as a condition of receiving public assistance, creating coercive leverage that forces participation in the administrative scheme without informed consent regarding the constitutional rights being waived.

**(d) ADA Compliance Obligations:** The State Plan incorporates ADA compliance requirements. Any failure to accommodate disabled litigants within the Title IV-D scheme constitutes both a federal law violation and a breach of the cooperative agreement's own terms.

**19.** The State Plan's own language establishes that state statutory provisions do NOT override federal law. The agreement binds the state to federal supremacy. Therefore, any New Hampshire state statute (including RSA 173-B, RSA 458, RSA 461-A) that purports to authorize administrative adjudication of private rights without Article III protections is preempted to the extent it conflicts with the constitutional requirements affirmed by Jarkesy, Loper Bright, and Axon.

**20. The federal supremacy clause in the Title IV-D contract itself is the weapon that kills the state statutory scheme.** The State of New Hampshire voluntarily agreed that federal law controls. Federal law, as interpreted by the Supreme Court in Jarkesy, requires Article III protections and jury trial for adjudication of private rights. The state cannot invoke its own statutes (RSA 173-B, RSA 458, RSA 461-A) to override the very federal supremacy it contractually affirmed. The left hand cannot contradict the right hand. *Allegans contraria non est audiendus* — He who alleges contradictory things is not to be heard.

## VII. FACTUAL ALLEGATIONS — THE POISONOUS TREE

*"Fruit of the poisonous tree must be excluded."*
— Wong Sun v. United States, 371 U.S. 471 (1963)

**21.** Three Laconia Police reports generated PRIOR to the Domestic Violence Petition established the following undisputed facts:

**(a) November 18, 2012:** Police responded to the residence. There was "a verbal disagreement" about Plaintiff's position on the Second Amendment. Ms. May stated "there was no physical contact" and the officer "did not observe any evidence of assault."

**(b) November 23, 2012:** Ms. May confirmed "no threat or harm in any way." Police did not view Plaintiff as a threat.

**(c) December 2, 2012:** Ms. May stated Plaintiff "agreed to see a counselor" and they were working things out. The officer concluded: "There will be no further police assistance with this request, an emergency order of protection was not required and the situation is in process of being resolved."

**22.** ELEVEN DAYS after police determined no emergency order was required, on December 13, 2012, Ms. May filed a 5-page Domestic Violence Petition based on allegations of "harassment," "abuse," and "threatening"—without probable cause, without any criminal prosecution, and in direct contradiction of three police reports finding no threat, no violence, and no danger.

**23.** On December 13, 2012, Officer Benjamin C. Black escorted Plaintiff from the residence with "negative contact"—no firearms or weapons were found, contradicting the central allegation of the DV petition.

**24.** TWO separate medical/psychological evaluations have contradicted the allegations:

**(a) March 15, 2013:** Court-ordered psychological evaluation found Plaintiff "knows right from wrong, appears oriented to reality, not a danger to self or others."

**(b) May 5, 2013:** Licensed counselor Daron Friedman wrote that Plaintiff was "actively participating in counseling" and cited the loss of contact with his son (77+ days) as a primary stressor. No findings of being unfit.

**(c) August 24, 2017:** Second medical evaluation again contradicted the allegations that formed the basis of the DV petition and all subsequent orders.

**25.** Despite two contradicting medical evaluations, no criminal prosecution, no probable cause, and three police reports finding no threat, the Family Division has maintained and repeatedly extended the protective order—from 2013 to 2020 to 2025—using its own prior orders as justification for further orders in a self-referencing cycle of administrative bootstrapping. Each extension generated additional Title IV-D administrative activity, additional federal reimbursement, and additional performance incentive payments to the state.

## VIII. THE RELABELING SCHEME — PRIVATE RIGHTS DRAGGED INTO AN ADMINISTRATIVE STAR CHAMBER

**26.** The New Hampshire Family Division has done precisely what Justice Gorsuch condemned. It has:

**(a) Relabeled** a private parental rights dispute as an administrative Title IV-D enforcement action, thereby avoiding Article III constitutional requirements;

**(b) Relabeled** administrative referees as "judges," thereby avoiding the incompatible office prohibitions that apply when administrative officers exercise judicial functions;

**(c) Eliminated rules of evidence** in proceedings that determine custody, property, and liberty—Judge Garner's own admission at the March 28, 2023 legislative hearing and in his April 16, 2024 order that "Rules of Evidence do not apply";

**(d) Eliminated trial by jury** in proceedings that adjudicate the most fundamental private rights a person possesses—the relationship between parent and child;

**(e) Created a financial incentive structure** where the adjudicating apparatus profits from enforcement actions through federal reimbursement and § 658a performance incentive payments, violating the due process prohibition against financially interested tribunals. *Tumey v. Ohio*, 273 U.S. 510 (1927).

**27.** *It is as much a violation to do something indirectly as it is directly.* New Hampshire did it indirectly. It is still a violation.

## IX. SISTER-STATE PRECEDENT — RULED UNCONSTITUTIONAL AND THEY KEPT GOING

*"Things invalid from the beginning cannot be made valid by subsequent act."*
— *Trayner, Max. 482*

**28.** Other state supreme courts have already ruled that Title IV-D administrative child support processes violate separation of powers and are unconstitutional:

**(a)** *Holmberg v. Holmberg*, 588 N.W.2d 720 (Minn. 1999): The statutory administrative child-support process violated the state constitution's Separation of Powers provision by unconstitutionally impinging on the powers of the judiciary.

**(b)** *State v. Schwartz* (2000): The administrative child support process violates separation of powers and is unconstitutional.

**(c)** *Brayton v. Pawlenty*: Same holding—Title IV-D administrative process violates separation of powers.

**29.** These rulings were publicly available. They were known to legal professionals. The New Hampshire BCSS, DHHS, and the Family Division referees are charged with knowing them. Instead of complying, New Hampshire continued operating the same unconstitutional scheme. That is not good-faith reliance on existing law. That is willful continuation of a known unconstitutional arrangement.

## X. PATTERN OF DUE PROCESS VIOLATIONS

**30.** The following pattern of due process violations demonstrates that the New Hampshire Family Division cannot provide adequate protection of Plaintiff's federal rights:

**(a)** A DV Protective Order was issued on the basis of allegations contradicted by three police reports and without any criminal prosecution or finding of probable cause for any crime;

**(b)** Sole custody was awarded to Ms. May "because of the Domestic Violence Protective Order" (August 30, 2013 Narrative Parenting Decree, p. 6)—meaning the custody determination was derivative of the baseless DV order, not an independent evaluation;

**(c)** Rules of evidence were not applied in any proceeding (Garner admission, 4/16/2024 Order, p. 6);

**(d)** Trial by jury was denied in every proceeding;

**(e)** The protective order was extended multiple times (2/4/13, 2/25/14, 2/27/15 for five years, 2/28/20 for five more years) despite three medical evaluations contradicting the allegations;

**(f)** Plaintiff was found in contempt (2/28/2020) for having a family member send a gift to his son—conduct that involved no threat, coercion, or violence—resulting in further extension of the protective order;

**(g)** An arrest warrant was issued for failure to pay court-ordered attorney fees (2/28/2020, Belknap County, paid in full $2808.00; 3/2/2022, Wake County NC)—constituting imprisonment for debt in violation of debtors' prison prohibitions;

**(h)** Ms. May was permitted to relocate with the child to North Carolina (April 2015), and the distance was then used as the basis to deny Plaintiff's modification request

(8/24/2017)—Judge Garner noting "the geography would not permit a shared parenting agreement." The system created the distance, then weaponized it;

**(i)** Every federal court challenge has been dismissed on procedural doctrines (Rooker-Feldman, Younger abstention, Eleventh Amendment immunity) without any court reaching the merits of the structural constitutional challenge.

## XI. CLAIMS FOR RELIEF

### COUNT I: 42 U.S.C. § 1983 — Deprivation of Due Process (Fourteenth Amendment)

**31.** Defendants, acting under color of state law, deprived Plaintiff of his constitutionally protected liberty interest in the care, custody, and companionship of his child, and his property interests in support obligations and freedom from unlawful imprisonment, without due process of law, by adjudicating these rights through an administrative tribunal that: (a) applies no rules of evidence; (b) provides no jury trial; (c) operates under a federal revenue incentive structure that creates structural bias; and (d) is staffed by administrative referees operating under a Title IV-D cooperative agreement that renders them federal contractors rather than neutral judicial officers.

### COUNT II: 42 U.S.C. § 1983 — Deprivation of Seventh Amendment Right to Jury Trial

**32.** Defendants deprived Plaintiff of his Seventh Amendment right to a jury trial in all proceedings adjudicating his private property and liberty rights. Under *SEC v. Jarkesy*, 603 U.S. 109 (2024), the government cannot strip the right to jury trial by assigning private rights adjudication to an administrative tribunal. The New Hampshire Family Division is precisely such a tribunal.

### COUNT III: 42 U.S.C. § 1983 — Deprivation of First Amendment Right to Petition

**33.** Plaintiff's prior judicial complaints, ethics complaints, and legislative petitions (including three JCC complaints: jc-14-031-G, jc-17-057-G, jc-20-031-G; an ethics complaint 8/29/2014; a Redress of Grievance to the NH House 9/16/2015; and formal complaints to Administrative Judges Kelly and Keating) were systematically dismissed without investigation, creating a pattern of retaliation for exercise of First Amendment petition rights.

### COUNT IV: 42 U.S.C. § 1985(3) — Conspiracy to Deprive of Civil Rights

**34.** Defendants conspired to deprive Plaintiff of equal protection and due process by operating the Title IV-D administrative scheme in a manner that systematically strips parental rights from non-custodial parents without constitutional protections, using the scheme's financial incentive structure to maximize enforcement actions and revenue generation at the expense of fundamental rights.

### COUNT V: 18 U.S.C. § 1962 — RICO (Pattern of Racketeering Activity)

**35.** The Title IV-D enterprise constitutes an "enterprise" within the meaning of 18 U.S.C. § 1961(4). Defendants conducted or participated in the conduct of the enterprise's affairs through a pattern of racketeering activity including: (a) extortion under color of official right (18 U.S.C. § 1951)—the extraction of money through contempt orders and arrest warrants issued by an administratively-conflicted tribunal; (b) fraud (18 U.S.C. § 1341)—the use of a DV petition

unsupported by probable cause as the jurisdictional trigger for the entire Title IV-D extraction scheme; and (c) federal program fraud (18 U.S.C. § 666)—the collection of federal reimbursement and incentive payments for enforcement actions taken in cases where the underlying orders were constitutionally void.

## COUNT VI: Structural Challenge — Title IV-D Scheme Unconstitutional as Applied

**36.** The New Hampshire Title IV-D administrative adjudication scheme, as applied to Plaintiff and to all similarly situated non-custodial parents, violates the Fourteenth Amendment's Due Process Clause, the Seventh Amendment's right to jury trial, and the separation of powers principles inherent in Article III of the United States Constitution, by: (a) adjudicating private rights in administrative proceedings without Article III protections; (b) eliminating rules of evidence in proceedings determining custody, support, and liberty; (c) denying jury trial in proceedings involving private property and liberty rights; (d) creating financial incentive structures that bias the tribunal toward enforcement and collection; and (e) operating under a federal cooperative agreement that renders judicial officers federal contractors with incompatible obligations.

## XII. PRAYER FOR RELIEF

**37.** WHEREFORE, Plaintiff respectfully prays that this Court:

**(a)** DECLARE that the New Hampshire Title IV-D administrative adjudication scheme, as operated through the Family Division Circuit Court, violates the Due Process Clause of the Fourteenth Amendment, the Seventh Amendment right to jury trial, and Article III separation of powers principles;

**(b)** DECLARE that the New Hampshire State Plan (Title IV-D cooperative agreement) creates an unconstitutional financial incentive structure that renders the Family Division tribunal structurally biased in violation of *Tumey v. Ohio*, 273 U.S. 510 (1927);

**(c)** DECLARE that all orders issued within the Title IV-D administrative scheme without Article III protections, rules of evidence, and jury trial are constitutionally void;

**(d)** ENJOIN Defendants from further adjudication of Plaintiff's parental rights, custody, support, and protective order matters through the Title IV-D administrative scheme;

**(e)** AWARD compensatory damages for the thirteen years of deprivation of parental rights, liberty interests, and property rights;

**(f)** AWARD punitive damages against Defendants acting in their individual capacities;

**(g)** AWARD attorney's fees and costs under 42 U.S.C. § 1988;

**(h)** GRANT such other and further relief as this Court deems just and proper.

# FEDERAL VERIFICATION

### 28 U.S.C. § 1746

I, Randall Collier, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief. This declaration is made in accordance with 28 U.S.C. § 1746.

Executed on: _APRIL 27_____, 2026

Randall Collier

Sui Juris, Pro Se, All Rights Reserved

# CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below, a true and correct copy of the foregoing AMENDED COMPLAINT was served upon all Defendants at their last known addresses by first-class United States Mail, postage prepaid, and/or by electronic filing through the Court's CM/ECF system:

**NH 4th Circuit Referees:**

Michael Garner, Carroll, Gordon, Lombardi

c/o NH Circuit Court, 4th Circuit, Family Division-Laconia

26 Academy Street, Laconia, New Hampshire 03246

**NH 8th Circuit Referees:**

Tessier, Ryan, Johnson, Forrest

c/o NH Circuit Court, 8th Circuit, Family Division-Keene and District Division-Keene

33 Winter Street Keene, New Hampshire 03431

**Belknap County Commissioners:**

Priscilla Dudek, Mark Labelle

34 County Drive Laconia, New Hampshire 03246

**Bureau of Child Support Services / NH DHHS:**

111 Key Rd Keene, New Hampshire 03431

**Hillary May:**

108 Ackley Court Cary, North Carolina 27513

**NH Supreme Court Clerk:**

Timothy A. Gudas

1 Charles Doe Drive Concord, New Hampshire 03301

**NH Superior Court Clerk:**

Brendon C. Thurston

33 Winter Street Keene, New Hampshire 03431

**NH Attorney General's Office:**

Attorney Duncan A. Edgar

1 Granite Place Concord, New Hampshire 03431

**Cheshire County Attorney's Office:**

Attorney Kimberly A. Kossick

12 Court Street Keene, New Hampshire 03431

**Cheshire County Sheriffs:**

Todd Shanks, Douglas Carroll

12 Court Street Keene, New Hampshire 03431

**NHSP:**

James Lamoureax, Paul Bergeron

15 Ashbrook Court Keene, New Hampshire 03431

Date: April 27 , 2026

Randall Collier

Sui Juris, Pro Se, All Rights Reserved